METZGER, JOSEPH P., Associate Judge.
This is an appeal by Harriet E. Sebold and Hermann Sebold, her husband, from a final judgment in their favor together with an order denying their motion for new trial as to damages. The main thrust of the appeal is the inadequateness of the verdicts and judgment.
*199 The lawsuit originated from a rear end collision which occurred on August 8, 1964, in Broward County. The trial court entered a summary judgment as to liability in favor of the plaintiffs, and the case proceeded to trial on the sole issue of damages The jury returned a verdict in favor of the plaintiff, Harriet E. Sebold, in the amount of $1,000.00 and a verdict in favor of the plaintiff, Hermann Sebold, in the amount of $4,000.00. Plaintiffs’ motion for new trial was denied and this appeal ensued.
Harriet Sebold in 1954 had undergone a spinal fusion of the lumbar vertebrae at the D-4-, L-5, S-l levels.
After the accident of August 8, 1964, the injured plaintiff was seen by Dr. Allen S. Watson, Jr., an orthopedic surgeon, who diagnosed Mrs. Sebold’s injuries as an acute muscle strain of the cervical region. Dr. Watson prescribed a muscle relaxant and medication for pain and recommended physical therapy. Dr. Watson saw Mrs. Sebold seven times between August 8, 1964 and January 7, 1965, his treatment relating solely to the neck area.
At trial the following testimony was elicited from Dr. Watson:
“Q When did you next see her ?
“A She was next seen on January 7, 1965. At that time she was about five or six months after her accident. She had received therapy for several months. She continued to notice intermittent discomfort in the cervical area and upper shoulder region that was somewhat annoying, but apparently was not incapacitating to her at that time. It was felt that no additional therapy would be beneficial to her neck region at that time, and that I anticipated her symptoms would improve over the next year or so in that area.
“It was felt she could be discharged from my care concerning her neck injury at that time.
“Q Doctor, during any of that time you saw her from August through January of 1965, did you render any treatment to her low back ?
“A No,‘ I did not. As a matter of fact, it was most interesting that she mentioned some time during that time, as best I recall, that she was most grateful that in the course of her accident that she did not have any symptoms in her back at that time since she had had previous back difficulties and was, therefore, naturally concerned about her lower back, because of her previous troubles, and she had not had any symptoms in her lower back during this entire period.
“Q So that the only treatment that was rendered was rendered in the first two months after this accident and that was to the cervical or upper back region?
“A Correct.”
Dr. Watson’s charges for the seven visits concerning the neck injury came to a total of $70.00.
The record discloses that after Dr. Watson discharged Mrs. Sebold from his care, the plaintiff was seen by Dr. George Ra-hilly, also an orthopedic surgeon and a member of the same medical group as Dr. Watson. On March 17, 1965, Dr. Rahilly performed a myelogram, the results showing a ruptured disc at the L-3 level. A laminectomy was performed on June 9, 1965 and subsequently a second operation, a fusion of L-3 to L-4, was done in June of 1967. Medical expenses were considerable, the jury having before it medical expenses in the amount of $3,413.20, all of which plaintiffs claimed were necessarily incurred due to the alleged accident injuries.
The record reveals the history Mrs. Se-bold gave to Dr. Rahilly was that she had trouble with her low back about twelve hours after the accident. This was in di *200 rect contradiction to Dr. Watson’s testimony, who testified that the history received by him from Mrs. Sebold completely negated any complaints regarding the low back immediately following the accident and for six months thereafter.
In addition, the trial testimony indicates a conflict between the history given by Mrs. Sebold to Dr. Donald Sheffel, a consulting physician, and Dr. Watson.
The test to be utilized in determining the adequacy of a verdict is whether a jury of reasonable men could have returned the verdict. (See Griffis v. Hill, Fla., 230 So.2d 143, opinion on rehearing granted filed November 19, 1969.)
An analysis of the trial record herein demonstrates that the verdicts under attack meet the “reasonable man” test. The jury, as reasonable men could have determined, as apparently they did, that Mrs. Sebold received only an injury to her neck as a result of the August 1964 accident, and that her back complaints and ensuing problems which did not appear until six months after the accident, were a continuation of her prior back condition, and totally unconnected with the collision of August 8, 1964.
Apposite here is the language of the Fourth District Court of Appeal in Anastasio v. Summersett, Fla.App.1969, 217 So.2d 854, at pages 855-856 supra:
“Had there been any basis in the evidence upon which the jury could have reasonably concluded that plaintiff was not in fact injured, or that plaintiff’s injuries were from another accident or a pre-existing cause, or that plaintiff’s proof of his alleged injuries was not believable either because it was grounded upon his subjective complaints or because it was based upon medical testimony which was disputed, then in any of those events we certainly would not say that the jurors as reasonable men could not have found the verdict they did.”
Accordingly, the entry of the final judgment and the denial of the motion for new trial was without error.
Affirmed.
REED, J., concurs.
CROSS, C. J., concurs in conclusion.